UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LANCE REBERGER,<br><br>                 Petitioner,<br>v.<br>RENEE BAKER, et al.,<br><br>                 Respondents. | Case No. 3:13-cv-00071-MMD-VPC<br><br>ORDER |

    This represented habeas matter comes before the Court on petitioner's motion to stay (dkt. no. 41), which seeks a stay for exhaustion in the state courts.

**I.    BACKGROUND**

    Petitioner Lance Reberger challenges his Nevada state conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and burglary.

    Reberger challenged the conviction on direct appeal and on a first state post-conviction petition. Proceedings on the latter concluded with the issuance of the remittitur on the state post-conviction appeal on January 7, 2013.

    On federal habeas review, the Court appointed counsel, noting the lengthy sentence structure, the potential complexity of the issues, and the substantial unexpired time remaining in the federal limitation period for appointed counsel to develop and present claims without limitation concerns.

    On January 6, 2014, petitioner filed a counseled first amended petition. Shortly thereafter, on January 15, 2014, petitioner filed the present motion to stay.

Petitioner seeks a stay in the main to exhaust Ground 1 of the first amended petition, with petitioner having filed a second state petition shortly after the federal first amended petition. In Ground 1, petitioner raises *Brady-Napue* claims[1] alleging, *inter alia*, that the State failed to disclose that his co-defendant, Amber Harvey, testified for the State in exchange for a deal that eliminated a consecutive life sentence for her but then denied the existence of the deal in her testimony.[2] Petitioner bases the claim in part on evidence developed by federal habeas counsel during investigation of the case.[3]

Petitioner additionally is pursuing a number of claims of ineffective assistance of trial and appellate counsel that are alleged both in the federal first amended petition and in the second state petition. Petitioner asserts that he is doing so out of an abundance of caution to eliminate any question as to whether all claims as presented in the first amended petition have been exhausted on state post-conviction review.

## II. DISCUSSION

Petitioner seeks a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), to exhaust Ground 1. In order to obtain a *Rhines* stay to return to the state courts to exhaust a claim, a petitioner must demonstrate that there was good cause for the failure to exhaust the claim, that the unexhausted claim is not plainly meritless, and that the petitioner has not engaged in intentionally dilatory litigation tactics. *See* 544 U.S. at 278.

### A. Good Cause

As the Ninth Circuit recently emphasized in *Blake v. Baker*, 745 F.3d 977 (9th Cir. 2014), the contours of what constitutes "good cause" under *Rhines* are not fully developed:

> There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust. In *Rhines*, the Supreme Court did not explain the standard with precision. *See* 544 U.S. at 275-78, 125 S.Ct. 1528. The Court has since addressed the meaning of good cause in only one other case, recognizing in dicta that "[a] petitioner's reasonable

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963); *Napue v. Illinois*, 360 U.S. 264 (1959).
[2] Dkt. no. 16, at 17-46.
[3] *See*, in particular, *id.*, at 30-32.

2

> confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" to excuse his failure to exhaust. *Pace v. DiGuglielmo*, 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing *Rhines*, 544 U.S. at 278, 125 S.Ct. 1528).
>
> Similarly, our cases on the meaning of good cause under *Rhines* are also sparse. In *Jackson v. Roe*, 425 F.3d 654 (9th Cir.2005), we held that good cause does not require a showing of "extraordinary circumstances." *Id.* at 661-62. In *Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008), we held that a petitioner did not establish good cause simply by alleging that he was "under the impression" that his claim was exhausted. *Id.* at 1024. We explained that accepting as good cause the mere "lack of knowledge" that a claim was exhausted "would render stay-and-abey orders routine" because "virtually every habeas petitioner" represented by counsel could assert that he was unaware of his attorney's failure to exhaust. *Id.*

745 F.3d at 980-81; see also *id.*, at 981-82 (clarifying *Wooten*).

The Court finds that petitioner has demonstrated good cause for the prior failure to exhaust the *Brady-Napue* claims because he presents claims based upon evidence developed by federal habeas counsel that petitioner asserts he was unable to develop successfully as a *pro se* inmate in the prior state court proceedings.

The Court emphasizes the preliminary nature of the procedural question presented on a motion to stay. The district court is determining only the preliminary procedural issue of whether the federal action should be stayed while the petitioner pursues further exhaustion in the state courts. *Cf. Blake*, 745 F.3d at 984 (satisfaction of the *Rhines* good-cause standard "only permits a petitioner to return to state court . . . to exhaust his unexhausted claims" and thus does not require a stronger showing than that required to establish cause under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to overcome a procedural default). The Court thus, clearly, is not going to definitively resolve the *Brady-Napue* claims as a prerequisite to determining whether to enter a stay to afford the state courts an opportunity to consider the claims in the first instance. *Cf. Gonzalez v. Wong*, 667 F.3d 965, 979-80 (9th Cir. 2011), *cert. denied*, 133 S.Ct. 155 (2012) (noting that, in the circumstances presented, a stay was appropriate because it provided the state courts with the first opportunity to resolve a *Brady* claim based upon evidence developed for the first time on federal habeas review). Rather, it suffices for

the present good-cause inquiry that petitioner has presented colorable or potentially meritorious *Brady-Napue* claims based upon evidence developed for the first time by petitioner in federal court. *Id.*

The Court, accordingly, is not persuaded that a preliminary procedural request for stay should be denied based upon the premise, which respondents continue to assert, that there was no deal between Harvey and the State. Petitioner presents at least colorable claims.

In this regard, Amber Harvey was tried and convicted prior to Reberger's trial. On August 4, 1992, Harvey, through counsel, filed a motion for voluntary dismissal of her direct appeal from that conviction. Counsel's supporting affidavit stated in pertinent part:

> That the present Motion for Voluntary Dismissal of Appeal is brought pursuant to and in accordance with negotiations entered into with the Clark County District Attorney's Office. The substance of those negotiations is that Appellant Harvey would agree to voluntary dismissal of the present appeal and would agree to testify truthfully at the trial of the cause of State of Nevada v. Lance Reberger, wherein defendant Reberger is charged with murder with the use of a deadly weapon arising out of the same incident for which Appellant Harvey stands convicted in the case at bar. In exchange, the State agrees not to oppose Appellant Harvey's petition for post-conviction relief, the granting of which would result in amendment of the judgment of conviction to reflect omission of the life imprisonment sentence which had previously accompanied the use of a deadly weapon allegation and conviction in the original judgment of conviction filed against Appellant Harvey in the present matter.
>
> That affiant has fully discussed potential appeal issues as well as the above negotiations with appellant, and believes that it is in appellant's best interest that a voluntary dismissal of the present appeal be sought in accordance with the above-described negotiations.

Dkt. no. 23, Ex. 78, Robert Miller Affidavit (paragraph numbering omitted). Amber Harvey also submitted an affidavit with the motion to dismiss, attesting to the same deal with the State.

Direct appeal counsel — who potentially would have been the subject of allegations of ineffective assistance of counsel for any error in his representations in the motion — never sought to reinstate the appeal based on the deal instead having been only inchoate, misunderstood, or not completed.

4

Amber Harvey thereafter testified for the State against Reberger at his trial on January 19, 1993.

On November 9, 1993, a hearing was held in Harvey's case on a motion for new trial. The court opened the hearing by immediately granting the motion, with no prior on-record argument or discussion. Immediately following the grant of the motion, defense counsel — the same lawyer as from the dismissed direct appeal — stated that negotiations had been entered pursuant to which Harvey would enter a plea to the prior charges of which she had been convicted except for the omission of the life sentence which had previously accompanied the use of a deadly weapon conviction in the original judgment of conviction. In short, Harvey obtained exactly the relief — elimination of the life sentence for the weapon enhancement — that had been stated to the Supreme Court of Nevada in the motion to dismiss as being the consideration for her testifying in Reberger's trial. The plea was entered at the November 9, 1993, hearing along these lines expressly without objection by the State.[4]

Perhaps it was coincidence that Harvey obtained the same relief in her state post-judgment proceeding that was identified as the *quid pro quo* to be obtained — in such a proceeding — in the deal that was the stated basis for her voluntary dismissal of her direct appeal. However, the motion to dismiss — which was never withdrawn thereafter on the basis of the deal being inchoate, misunderstood, or not completed — provides a basis for colorable or potentially meritorious *Brady-Napue* claims. The past reflected by the motion not only was prologue in this instance, it was accurate prologue, substantially to the letter of the deal that the State has asserted was never completed.

///

---

[4] Dkt. no. 31, Ex. 156. The prosecutor's contrary statement at a September 4, 2009, hearing sixteen years later (*see* dkt. no. 35, Ex. 233, at 30), perhaps may be evidence to be considered. However, it does not negate the claims on the face of the record. Nor can Harvey's testimony at Reberger's trial that there was no deal negate the claims on the face of the record. There, of course, never could be a viable *Napue* claim if the State witness's testimony on its face negated any claim that the witness committed perjury.

5

The Court thus will not deny a stay as a preliminary procedural matter on a premise that petitioner has no evidence supporting his *Brady-Napue* claims that might tend to establish that a deal was completed. The State of course can pursue its arguments contesting the merits of the claims during the exhaustion of the claims in the state courts.

Similarly, the Court is not persuaded that a stay should be denied because materials such as the motion to dismiss were of public record.

With regard to the merits of the underlying claims, it is established law that the fact that the defendant possibly might have been able to obtain the information independently from public records is no defense to either claim. *See, e.g., Amado v. Gonzalez*, 734 F.3d 936, 950-51 (9th Cir. 2013) (under *Brady* and its progeny, "it is the prosecution's duty to provide material impeachment information to the defense, not the defense's duty to find that information by itself"); *Milke v. Ryan*, 711 F.3d 998, 1017-18 (9th Cir. 2013) ("That the court documents showing [the witness'] misconduct were available in the public record doesn't diminish the state's obligation to produce them under *Brady*."); *United States v. LaPage*, 231 F.3d 488, 491-92 (9th Cir. 2000) (*Napue* violation occurs even if the defense allegedly actually knows of the falsity of the perjured testimony). There potentially may be no *Brady* violation where the State *discloses* all the information necessary for the defense to discover the alleged *Brady* material. *Milke, supra*. However, where the State instead *denies* that the favorable information exists, quite arguably no such onus should be placed on the defense to independently search for potential impeachment evidence, here as to a deal that the State denied — and denies — existed.

With regard to the matter of whether the previously *pro se* petitioner had good cause for not exhausting a claim on the basis of the evidence tendered now, federal habeas counsel of course faces less logistical and other hurdles to developing evidence

///

///

concerning another inmate.[5] Reberger filed a motion in the Supreme Court of Nevada during his state post-conviction appeal, invoking *Brady*, seeking to obtain the records from Amber Harvey's appeal, noting that the documents could provide proof of, *inter alia*, "any negotiations made between her attorney and the State." However, the state supreme court denied relief on all of petitioner's submissions filed on the appeal.[6]

The Court accordingly finds that petitioner has demonstrated good cause under *Rhines* for the prior failure to exhaust.

### B. Not Plainly Meritless

When the *Rhines* Court discussed the issue of whether a petitioner has presented a claim that is not plainly meritless, the Court made a comparison cite to 28 U.S.C. § 2254(b)(2) concerning this inquiry. 544 U.S. at 277. The Ninth Circuit has held that a district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

The foregoing discussion reflects that Ground 1 raises at least colorable federal claims under *Brady* and *Napue*.

///

///

---

[5]*Cf.* Nevada Department of Corrections AR 722.04(9) & (10):

9. Legal opinions, books, papers and forms used by one inmate to assist another may be in possession of the inmate giving assistance, with the written permission of the owner.
10. When an inmate other than an inmate library assistant is helping another inmate, all papers must be returned when either inmate is released; when either inmate is transferred to another institution; or when administrative action such as placement in disciplinary segregation prevents direct communication between the two inmates. The only exception is if the inmates are active codefendants or co-plaintiffs on a current case being litigated.

[6]*See* dkt. no. 38, Ex. 247, at 2; Ex. 249, at 9 n.7. Petitioner also filed a motion in the state district court on state post-conviction review seeking to unseal records, *inter alia*, regarding Amber Harvey, including "any deals made . . . to her by any parties." The State opposed the motion, and the state district court denied the motion. Dkt. no. 35, Ex. 228, at 4; Exhs. 229-31.

### C. No Intentionally Dilatory Tactics

Nothing in the record before the Court reflects that petitioner has engaged in intentionally dilatory tactics. While it perhaps is not utterly inconceivable that a noncapital habeas petitioner might engage in intentionally dilatory tactics, the relevance of this factor, as a practical matter, largely is restricted to capital cases.[7] Respondents present no argument suggesting that petitioner has engaged in such tactics. The Court accordingly finds on the record presented that petitioner has not engaged in intentionally dilatory tactics.

Petitioner's request for a stay accordingly will be granted.

### D. Remaining Matters

Respondents request in the alternative that if the Court grants the motion for a stay that it should be a "one-time trip" with no opportunity for a second stay if other claims are found to be unexhausted. Dkt. no. 43, at 2 & 5. Obviously, a petitioner in most circumstances would have a steeper hill to climb to establish good cause for a second stay request and/or to pursue unexhausted claims. However, the Court will not make an advisory ruling as to a motion and a situation that is not now before it.[8]

Nor is the Court persuaded that petitioner has conceded that he cannot satisfy the *Rhines* factors as to the other grounds pursued on the second state petition by

---

[7] *Cf. Lawrence v. Florida*, 549 U.S. 327, 344 & n. 9 (2007) (Ginsburg, J., dissenting) ("Most prisoners want to be released from custody as soon as possible, not to prolong their incarceration. They are therefore interested in the expeditious resolution of their claims. . . . . Though capital petitioners may be aided by delay, they are a small minority of all petitioners."); *Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), *vacated for reconsideration on other grounds*, 131 S.Ct. 1042 (Jan. 24, 2011) (petitioner "had not engaged in dilatory tactics and he had no motivation for delay, as he is not a capital defendant").

[8] Respondents' "one-time trip" request constitutes a variation on a prior theme. In past cases, respondents have requested that the Court give a petitioner an instruction that "absent truly extraordinary and unforeseeable circumstances," he must bring only claims that are exhausted upon his return to federal court. The Court previously has declined to give such an instruction because it, at best, would merely state the obvious and, at worst, would provide scant true guidance if a second stay were sought. Any number of situations may arise between two requests that conceivably might provide good cause for a second stay. Prudence counsels in favor of ruling on just one stay request at a time.

presenting argument in the stay motion only as to Ground 1. Petitioner needs to satisfy the *Rhines* criteria only as to one ground, and the Court's inquiry extends only to whether a stay should be entered. It does not conduct a claim-by-claim assessment as to whether the *Rhines* criteria are satisfied if it determines that a stay is warranted as to at least one ground. The Court only is entering a stay. It is not granting permission to pursue specific claims and/or directing a petitioner to pursue specific claims. Petitioner instead determines what claims are pursued during the stay over and above the claim that serves as the predicate for a stay. The Court therefore expresses no opinion as to whether petitioner also might be able to establish good cause as to the remaining, ineffective-assistance claims based on the procedural history in the state courts. *Cf. Blake, supra* (good cause under *Rhines* requires no stronger showing than that required to establish cause under *Martinez* with respect to an absence of effective assistance of counsel in the state post-conviction proceedings).

    Finally, the Court expresses no conclusive opinion by this order as to whether the circumstances presented satisfy the cause-and-prejudice standard with respect to any claim of procedural default. The holding herein should not be read as an express or implied holding on that issue or any other issue, including as to the merits. The Court holds here only that the criteria for a stay under *Rhines* have been satisfied, and its holding in this order is expressly limited to that specific context.

### III. CONCLUSION

    It is therefore ordered that petitioner's motion to stay (dkt. no. 41) is granted and that this action is stayed pending exhaustion of the unexhausted claims in Ground 1. Petitioner may move to reopen the matter following exhaustion of the claim, and any party otherwise may move to reopen the matter at any time and seek any relief appropriate under the circumstances.

    It is further ordered that, with a state post-conviction petition having been commenced prior to the stay, the grant of a stay is conditioned upon petitioner returning to federal court with a motion to reopen within forty-five (45) days of issuance of the

remittitur by the Supreme Court of Nevada at the conclusion of all state court proceedings.[9]

It is further ordered that, with any motion to reopen filed following completion of all state court proceedings pursued, petitioner: (a) shall attach an indexed chronological set of exhibits (with the corresponding CM/ECF attachments identified by exhibit number(s) on the docketing system) containing the state court record materials relevant to the issues herein that cover the period between the state court record exhibits on file in this matter and the motion; and (b) if petitioner then intends to further amend the petition, shall file a motion for leave to amend along with the proposed verified amended petition or a motion for extension of time to move for leave.[10] Respondents shall have thirty (30) days to file a response to the motion(s) filed. The reopened matter will proceed under the current docket number.

It is further ordered that any further hard copies of exhibits shall be sent — for any further proceedings this case — to the Clerk's Office in Reno. Counsel need not resend any copies sent previously instead to Las Vegas.

It is further ordered that the Clerk of Court shall administratively close this action until such time as the Court grants a motion to reopen the matter.

DATED THIS 3rd day of June 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[9] If *certiorari* review will be sought or thereafter is being sought, either party may move to reinstate the stay for the duration of any such proceedings. *Cf. Lawrence v. Florida*, 549 U.S. 327, 335 (2007).

[10] No claims are dismissed by this order.